UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROBERT JARED SMITH,

      Movant,

v.                         Case No. 2:99-cr-00198-3
                              Case No. 2:05-cv-00431

UNITED STATES OF AMERICA,

      Respondent.

PROPOSED FINDINGS AND RECOMMENDATION

     Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence, filed pursuant to 28 U.S.C. § 2255, on May 23, 2005 (docket sheet document # 542), which is in the form of a lengthy memorandum.

     Movant, Robert Jared Smith (hereinafter referred to as "Defendant"), is serving a sentence of 405 months in prison (reduced from life imprisonment), to be followed by a five year term of supervised release, upon his conviction by a jury of conspiracy to distribute cocaine base (Count One), and aiding and abetting the distribution of cocaine base (Count Five), in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Judgment in a Criminal Case, # 241, entered November 20, 2000, resentenced, Amended Judgment in a Criminal Case, # 436, entered November 4, 2002.) The District Court also imposed a special assessment of $200.00, and waived imposition of a fine. Id.

**Grounds for Relief**

In the Introduction to his Motion, Defendant summarized his grounds for relief as follows [quoted *verbatim*]:

A.  Fifth Amendment Due Process Abridgment: Petitioner's Conviction was obtained by this Court's Irrebuttable Presumptions concerning Drug Type and Quantity.  In addition, petitioner's Due Process Rights were violated in light of the admission of Co-Conspirator hearsay testimony, the admission of violations of 18 U.S.C. 201(c)(2), and the constitutionality of the sentencing Guidelines, both facially and applied in this case. Additionally, the Conviction was obtained through a jury verdict which failed to incorporate and determine, beyond a reasonable doubt, all elements of the change [sic; charged] offense.

B.   Sixth  Amendment  Right  to  Counsel  Abridgment: Petitioner's Conviction and Sentence during were tainted as petitioner did not receive effective assistance of counsel during the underlying Criminal proceedings as petitioner's counsel failed to properly object to the foregoing Fifth Amendment Violations and failed to provide the minimally expected level of expertise at sentencing.

C.  Evidentiar[y] Hearing: Petitioner is entitled to an evidentiary hearing on these issues.

(Motion, at 2-3.)

In the body of the Motion, Defendant makes the following arguments:

I.  Cause and prejudice: Petitioner seeks to vacate and set aside his conviction and sentence due to errors of constitutional magnitude occurring at his trial and at sentencing.  These errors were causative result of acute violations of petitioner's Fifth Amendment rights as well as petitioner's denial of effective assistance of counsel in  violation  of  the  Sixth  Amendment  to  the  U.S. Constitution.

II.  Petitioner's sentence must be set aside, because this Court of Appeals for the Fourth Circuit had in the

2

Hughes case effected a substantive change in the law of
this Circuit after the affirmance of his conviction, and
that its holding in Hughes requires his claim to be based
under a plain error standard of review.

III.  Petitioner's sentence must be set aside in light of
Booker, because the Booker decision did not announce a
new constitutional rule but merely applied the principles
previously announced in Apprendi v. New Jersey in view of
Yates v. Aiken.

IV.  Petitioner's case falls squarely within the rule of
Apprendi, Ring, and Booker.

V.  Petitioner's conviction and sentence were tainted as
Petitioner did not receive effective assistance of
counsel during the underlying criminal proceeding.

[There is no section VI.]

VII.  The District Court erred in convicting Mr. Smith,
for being in violation of § 841(b)(1)(A) and § 846
conspiracy as the government failed to prove an element
of each offense beyond a reasonable doubt.  Where
defendant never had a meeting of the minds to reach an
agreement to distribute 1.5 kilograms of cocaine base,
(2) where defendant or co-defendants were never in
possession of any drug or drug paraphernalia.

VIII.  Petitioner is entitled to an evidentiary hearing
on these issues.

PRAYER FOR RELIEF: Mr. Smith prays that this Honorable
Court takes judicial notice of the fact that said
petitioner's conviction did not become final before the
Supreme Court handed down the Blakely decision.

Id., at 4-6, 10, 13, 16, 19, 27, 28.)

It appears that these grounds for relief can be boiled down to

two claims: (1) that Defendant should be re-sentenced pursuant to

United States v. Booker, 543 U.S. 220 (2005); and (2) that

Defendant was denied effective assistance of counsel.  The other

claims are reiterations of these issues.

**Procedural History**

On October 5, 1999, the United States filed a criminal complaint, charging Defendant (and John William Clements) with engaging in a conspiracy to possess with intent to distribute and to distribute cocaine base (# 2). Defendant was arrested and made an initial appearance on October 13, 1999, and attorney Clinton W. Smith was appointed to represent him (## 5, 6). On October 14, 1999, a grand jury indicted Defendant (and Clements) (# 7). After a detention hearing, Defendant was ordered detained (## 10, 11).

On February 9, 2000, a grand jury returned a superseding indictment, naming Defendant and Jerman Lee James, Arbera Lamonte Ross, John William Clements, Leonard Andrew Sayles, David Lizial Bennett, Kennele Lavon Groom, and Tracy Lee Hairston (# 42). Defendant was named in counts one and five.

On July 11-13, 2000, Defendant and Leonard Andrew Sayles, Jr. stood trial before a jury and were convicted (## 176, 179).

On November 17, 2000, Defendant's sentencing took place. Mr. Smith filed four objections to the presentence report: relevant conduct (quantity of drugs), two-level enhancement for possession of a firearm, four-level enhancement for leadership role, and paragraph 23 (ownership of drugs thrown from a car on January 28, 1999). (Presentence Report, at 18.) The presiding district judge (then-Chief Judge Charles H. Haden II) heard testimony from several witnesses, crediting and rejecting some of their testimony. (Tr.

4

Sent. Hrng., # 286, at 222-224.)

THE COURT:                    * * *

    I do believe that the testimony that he [Dashawn Williams] gave on the sale of weapons to Mr. Smith is reliable testimony. * * *

    I agree with the defense that the reliable testimony here does not put the defendant over one and a half kilograms.  I put him in the category of 500 to less than 1.5 kilograms, . . . which would put him at a level 36. * * *

    I add the two point characteristic for the possession of the firearms during the life of the drug conspiracy.

    Mr. Smith has an elevated role in this organization, . . . and he is involved as an organizer and leader in an organization that involves five or more people and, consequently, the Court sets the 4 points on that.  So 36 and 2 is 38 and 4 is 42.

    The defendant has seven total criminal history points, that puts him in category IV . . . and thus he comes before the Court . . . being subject to an imprisonment range of 360 months to life in prison.  And you will recall that he was convicted of count number 1, the conspiracy charge that specifically involved the elements of more than 50 grams of crack cocaine and that satisfies the <u>Apprendi</u> situation. * * * [H]e's subject to a ten to life imprisonment range, under the guidelines it's 360 to life . . . .

<u>Id.</u>, at 224.

    Mr. Smith objected to the four level enhancement for role in

the offense, noting that the government had presented no evidence

at the hearing on that objections.  <u>Id.</u>, at 224-25.  Judge Haden

overruled the objection.  "Well, I adopt quite obviously the

findings of the presentence report and, of course, your client went

to trial and these issues were tried at trial and I abide by the

findings of the jury." Id., at 225.  Judge Haden, after giving

Defendant and his attorney an opportunity for allocution, then

addressed Defendant, who was then 21 years old:

> THE COURT: Well, Mr. Smith, you know, you have had
> a lot of chances since the age of 13 and you have been a
> seasoned criminal for a long, long time and it's
> absolutely remarkable the leadership role you have had in
> this significant drug dealing activity over quite a
> period of time.  You haven't given any indication in the
> past that you were going to reform your ways and there
> just isn't any basis here to give you anything other than
> the maximum sentence in this case.
>
> The Court imposes a committed sentence of life in
> prison.

Id., at 226.

The Judgment in a Criminal Case was entered on November 20,

2000 (# 241), and Mr. Smith promptly filed a notice of appeal (#

253).  Within a few weeks, Mr. Smith retained attorney Benjamin L.

Bailey to represent him on appeal.

Defendant's conviction was affirmed on appeal, but his

sentence was vacated and remanded, upon a finding that Judge Haden

committed clear error in imposing the four-level enhancement for

role in the offense, despite "the total absence of evidence as to

Smith's . . . aggravating role." United States v. Sayles, 296 F.3d

219, 227 (4th Cir. 2002).

Defendant's re-sentencing hearing took place on November 4,

2002; Defendant was present and represented by Benjamin L. Bailey.

The government presented a summary of the trial testimony to

supports its view that the four-level enhancement was appropriate.

6

(Tr. Re-sentence Hrng., # 570, at 3-6.)  Judge Haden commented that in the absence of additional evidence from the United States, he "would follow that opinion and say that the leadership role has not been established."  Id., at 8.  Eliminating the four-level enhancement for role in the offense yielded a total offense level of 38, and a guideline range of 324 to 405 months.  After allocution, Judge Haden commented, "consistent with the sentence that I did impose the last time around, the sentence should be at the high end of the guidelines."  Id., at 9.  He imposed a sentence of 405 months on Count One, and 240 months on Count Five, to run concurrently.  Otherwise the judgment remained the same.  (Amended Judgment in a Criminal Case, # 436.)  On November 18, 2002, Mr. Bailey filed a protective notice of appeal (# 437).

The Fourth Circuit docket sheet for appeal number 02-4928 reflects that on December 20, 2002, Mr. Bailey filed with the Clerk of the Fourth Circuit, a motion to withdraw from representation of Defendant.  On April 3, 2003, the Clerk entered an Order granting the motion to withdraw.  On June 5, 2003, Defendant filed a motion to proceed on appeal in forma pauperis.  On July 11, the motion was granted.  On August 11, 2003, attorney Joan Mooney was appointed to represent Defendant.

Ms. Mooney did not order the transcript of the re-sentencing hearing.  The undersigned has expanded the record to include it (# 569).  Ms. Mooney's first effort at filing the brief of appellant

was non-compliant; she was directed to file a corrected brief.  On December 29, 2003, Ms. Mooney filed a brief.  On January 12, 2004, the government filed a motion to strike appellant's brief; by order filed January 29, 2004, the motion to strike was granted.  Ms. Mooney was given additional time to file a brief, and she did so on February 17, 2004.  She filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), arguing only that the evidence was insufficient to support Defendant's conspiracy conviction.  Defendant was advised of his right to file a *pro se* supplemental brief, but he did not do so.

Defendant's sentence was affirmed.  United States v. Smith, No. 02-4928, 98 Fed. Appx. 962, 963 (4th Cir. June 8, 2004).  Blakely v. Washington, 542 U.S. 296, was decided on June 24, 2004.

At the conclusion of the decision affirming Defendant's conviction and re-sentence, the Fourth Circuit included its customary language for cases in which an Anders brief was filed:

> Within the constraints of the mandate rule, we have, as required by *Anders*, reviewed the record and have found no meritorious issues for appeal.  This court requires that counsel inform her client, in writing, of his right to petition the Supreme Court of the United States for further review.  If Smith requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court to withdraw from representation.

Id.  The Fourth Circuit's docket sheet does not indicate that Ms. Mooney moved to withdraw; she did not file a petition for a writ of certiorari.

8

By Orders entered July 18, 2005, the undersigned directed the Federal Public Defender to seek counsel to represent Defendant, and the United States was directed to submit an affidavit from Ms. Mooney concerning her compliance with the Plan of the United States Court of Appeals for the Fourth Circuit in Implementation of The Criminal Justice Act, Section V.2, concerning the right of a defendant to petition the Supreme Court for a writ of certiorari, during her representation of Defendant (# 547, 548).  Attorney Matthew A. Victor was appointed to represent Defendant.

On August 25, 2005, the United States filed its response, attaching a letter and an affidavit from Ms. Mooney.  The letter, dated June 25, 2004 (the day *after* the Supreme Court issued its decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), addressed to Defendant, stated:

> I received the order of the Fourth Circuit denying your appeal on June 10, 2004.  The judges did not buy any of our arguments, and did not come up with any on their own.  You have a right to have a Petition for Certiorari filed with the United States Supreme Court, and I will do that for you if you request.
>
> I certainly wish we would have achieved a better result and that you are doing well.  Please let me know if you want me to file the Petition, and on what issue.

(Response and Affidavit, Ex. A, # 554.)

Ms. Mooney's affidavit recites that she wrote the letter quoted immediately above, and then states:

> I remember speaking with Mr. Smith after that letter, and advising him that I did not believe he had a meritorious case for a Petition for Certiorari, but he

9

could file a habeas petition based on the issue of the
state police chemists that were on his case.  I do not
have the notes from that conversation as the family of my
late partner took many of the message books and other
papers when they cleaned out her office and the rest of
the offices.  I thought he understood that, and I admit
I did not promptly move to withdraw as counsel, as I
believed that I would assist him with the habeas
petition.

Id.

By Order entered September 29, 2005, the undersigned offered

Defendant the opportunity to respond to Ms. Mooney's affidavit.  On

November 14, 2005, Mr. Victor filed a Memorandum with exhibits,

including an affidavit from Defendant.   The affidavit reads as

follows:

I, Robert Jared Smith, received notice that my
appeal had been denied by the Fourth Circuit from my
attorney on or about the 30th of June, 2004.  She had
sent me a letter stating my appeal was denied, but she
would file a writ of certiorari to the United States
Supreme Court if that's what I wanted her to do.  She had
also stated that the Supreme Court had just found
Washington   State's   Sentencing   Guidelines
unconstitutional.  See attached.  Which I already became
aware of and was trying to get in touch with her but was
unable to get a client attorney phone call.  At the time
I got her letter I was able to get a call on that Monday
or Tuesday.  When we spoke I asked her would this new
case apply to Federal cases and she stated she wasn't
sure, so I asked her would she file the writ for me and
she stated she would.  I knew I needed to keep my case
open in case something good came along.  That was my main
reason for calling.  She also told me she probably no
longer be on my case after this.  I tried calling her
about 2 months later to find out if she heard anything
from the Supreme Court about me but was unable to reach
her.  I never had a doubt in my mind that she hadn't
filed.  So it wasn't no sense on me keep calling her
asking if she heard anything cause I knew she would let
me know.  I did end up trying to call a few more times
but still couldn't reach her.  So finally I had my sister

10

> to call her and when my sister reached her, she told my
> sister that she didn't file because she thought for some
> reason that I was going to file.  That was the last time
> any contact was made.  After that I started doing my 2255
> on my own because she told me she probably wouldn't be my
> attorney.

(Movant's Memorandum and Affidavit, # 558.)   Mr. Victor also attached a copy of the June 25, 2004 letter from Ms. Mooney to Defendant, with a handwritten postscript at the bottom of the letter.  The postscript states: "P.S.  The U.S. Supreme Court just found Washington State's Sentencing Guidelines unconstitutional. If you haven't filed your habeas petition yet please include that issue re: the Federal Sentencing Guidelines." _Id._  The Memorandum argues that Defendant's appellate and certiorari rights should be reinstated, with appointment of counsel.  _Id._

The United States filed a response which acknowledges that it "cannot refute Movant's claim that he requested that a Petition be filed on his behalf."  (Response, # 565, at 2.)  The government concedes that "Movant's appellate counsel was ineffective when, after being requested to do so, she failed to prepare for filing in the Supreme Court a timely Petition for a Writ of Certiorari." _Id._

### Post-Conviction Relief Pursuant to **Blakeley**

Defendant's Memorandum, in the "REQUEST FOR RELIEF," "prays that this Honorable Court takes judicial notice of the fact that said petitioner's conviction did not become final before the Supreme Court handed down the _Blakely_ decision." (Motion, at 28.)

Defendant's re-sentence was affirmed on June 8, 2004. _Blakely_

11

v. Washington, 542 U.S. 296 (2004) was decided on June 24, 2004.
Rule 13, Rules of the Supreme Court of the United States, provides
that a petition for a writ of certiorari is timely when it is filed
with the Clerk of the Supreme Court within 90 days after entry of
the judgment.  In Clay v. United States, 537 U.S. 522, 527 (2003),
the Supreme Court noted that in the context of postconviction
relief, a conviction becomes final when the Supreme Court "affirms
a conviction on the merits on direct review or denies a petition
for a writ of certiorari, or when the time for filing a certiorari
petition expires."  Accordingly, Defendant's conviction *was not
final* when Blakely was decided.

In United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005),
the Fourth Circuit held that United States v. Booker, 543 U.S. 220
(2005), "is not available for post-conviction relief for federal
prisoners . . . whose convictions became final before *Booker* (or
*Blakely*) was decided."  Defendant's conviction was not final when
Blakely was decided; if Defendant's appellate counsel had filed a
petition for a writ of certiorari, his conviction would not have
been final when Booker was decided.  Under these circumstances, the
undersigned proposes that the presiding District Judge **FIND** that
Blakely and Booker are available to Defendant for post-conviction
relief.

At Defendant's re-sentencing, no objection was made to the
increases in offense level for relevant conduct and possession of

a firearm.  Similarly, no issue was raised on appeal with respect to the increases.  Accordingly, Defendant must show "cause and actual prejudice" to excuse his failure to raise the issues before the District Court.  United States v. Frady, 456 U.S. 152, 167-68 (1982).  The existence of cause for a procedural default can be shown by a denial of effective assistance of counsel.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

### Cause: Ineffective Assistance of Counsel

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel.  Id. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  466 U.S. at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

13

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

The Plan of the United States Court of Appeals for the Fourth Circuit In Implementation of The Criminal Justice Act ("CJA Plan") provides as follows:

<u>V.  ATTORNEY'S DUTY TO CONTINUE REPRESENTATION</u>

\* \* \*

2.  <u>Appellate Counsel</u>: Every attorney, including retained counsel, who represents a defendant in this court shall continue to represent his client after termination of the appeal unless relieved of further responsibility by this court or the Supreme Court. Where counsel has not been relieved:

If the judgment of this court is adverse to the defendant, counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari. If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant. Thereafter, unless otherwise instructed by the Supreme Court or its clerk, or unless any applicable rule, order or plan of the Supreme Court shall otherwise provide, counsel shall take whatever further steps are necessary to protect the rights of the defendant, until the petition is granted or denied.

If the appellant requests that a petition for writ of certiorari be filed but counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari. The motion must reflect that a copy

14

was served on the client.

Similar language appears in the "Memorandum To Attorneys Appointed Under The Criminal Justice Act," also published by the Fourth Circuit.

The American Bar Association's publication which sets standards for attorneys who defend persons charged with crimes addresses the appellate duties of counsel as follows:

Standard 4-8.3 Counsel on Appeal

(a) Appellate counsel should not seek to withdraw from a case solely on the basis of his or her own determination that the appeal lacks merit.

* * *

(c) If the client chooses to proceed with an appeal against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court.   When counsel cannot continue without misleading the court, counsel may request permission to withdraw.

ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3rd ed., § 4-8.3, at 239 (1993).   In the Commentary to the Standard, the following appears:

Once counsel has accepted appointment or has been retained to pursue a client's case on appeal, he or she should continue representation of the client until all direct appeal possibilities desired to be pursued by the client are exhausted, new counsel is substituted, or a court otherwise orders or permits counsel to withdraw.

Id., at 242.

On June 24, 2004, the Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004), a case which sent a

shock wave through Federal and State courts.  Beginning shortly after June 24, 2004, legal journals, newspapers, lawyers, and legal commentators engaged in widespread speculation as to whether the United States Sentencing Guidelines were rendered unconstitutional under the reasoning of <u>Blakely</u>.  In keeping with today's high-tech web-logs ("blogs"), a blog devoted almost exclusively to <u>Blakely</u> issues became widely known and continues today.  *See* <u>http://sentencing.typepad.com.</u>  The uncertainty over the continued validity of the Sentencing Guidelines was so great that the Supreme Court expedited review of <u>United States v. Booker</u>, in which the Court ultimately ruled that the Sentencing Guidelines cannot be applied as mandatory restrictions on judicial discretion.

<u>Ms. Mooney's representation fell below an objective standard of reasonableness.</u>

It is apparent that Ms. Mooney did not follow the Fourth Circuit's directive, found at the conclusion of its decision, and the CJA Plan.  It is true that Ms. Mooney informed Defendant of his right to file a petition for a writ of certiorari.  However, her representation went no further to preserve and to prolong Defendant's direct appeal; in fact, it appears that she abandoned Defendant, and she never filed a motion to withdraw.

Counsel is not expected to predict the Supreme Court's rulings in a particular case.  However, Ms. Mooney had the <u>Blakely</u> decision in hand, and recommended that her client seek to have that decision

16

applied to his case, when she could have done it more effectively herself.  Moreover, widespread commentary strongly suggested that the Supreme Court would issue a landmark decision on <u>Blakely</u>'s application to the Sentencing Guidelines.  The only certain way to obtain review of Defendant's case in light of <u>Blakely</u> was to continue his direct appeal.

It was definitely not reasonable to advise Defendant to file a collateral challenge to his conviction and sentence, hoping that the Supreme Court would apply <u>Blakely</u> retroactively on collateral review.  It is a rare occurrence indeed for the Supreme Court to apply any of its decisions retroactively on collateral review.

The undersigned is well aware of precedent which holds that a defendant does not have a right to counsel for application for review in the Supreme Court.  <u>Ross v. Moffitt</u>, 417 U.S. 600 (1974). In <u>Wainwright v. Torna</u>, 455 U.S. 586 (1982), the Supreme Court held that a defendant was not deprived of effective assistance of counsel by his attorney's failure to timely file an application for certiorari, because he had no constitutional right to counsel to pursue discretionary review.  In <u>Austin v. United States</u>, 513 U.S. 5, 8 (1994), the Supreme Court expressed its opinion that Circuit councils should review their CJA Plans to "allow for relieving a lawyer of the duty to file a petition for certiorari *if the petition would present only frivolous claims*." [Emphasis added.]

Reading these cases in light of the Fourth Circuit's CJA Plan,

its Memorandum, and the ABA Standards suggests that an attorney, whether retained or appointed, is obliged to (1) notify his client of the possibility of Supreme Court review, and, if requested, (2) file a petition for a writ of certiorari as to nonfrivolous claims. If the client requests that a petition for a writ of certiorari be filed as to frivolous claims, then the attorney is obliged to file a motion to withdraw, with the expectation that the motion will be granted and the client will proceed *pro se*. Thus if there is a nonfrivolous claim to be raised in the Supreme Court, and a request by the client that a petition be filed, it is objectively unreasonable for an attorney to fail to do so.

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that Ms. Mooney's performance fell below an objective standard of reasonableness when she failed to file a timely petition for a writ of certiorari on Defendant's behalf, asserting that he should be re-sentenced based on <u>Blakely</u>.

## Prejudice

Defendant apparently asked his counsel, in light of <u>Blakely</u>, to file a petition for a writ of certiorari; it is impossible to determine, based on the present record, what other steps he asked his attorney to take post-<u>Blakely</u>. If a petition for a writ of certiorari had been filed, it is highly likely that Defendant's case, like thousands similar to it, would have been held pending the anticipated Supreme Court decision on the validity of the

18

Sentencing Guidelines.  Most of those cases have been remanded for proceedings consistent with United States v. Booker.

In United States v. Rodriquez, 433 F.3d 411 (4th Cir. 2006), the Fourth Circuit addressed the two types of Booker errors.

> First, a sentencing court commits Sixth Amendment error if it enhances a sentence beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant.  *See Booker*, 125 S. Ct. at 756; *United States v. White*, 405 F.3d 208, 215 (4th Cir.), [*cert. denied*, 126 S. Ct. 668] (2005).  Second, a court commits statutory error if it treats the Guidelines as mandatory, rather than as advisory ("statutory *Booker* error").  *See Booker*, 125 S. Ct. at 757; *White*, 405 F.3d at 215.

433 F.3d at 414.

The first inquiry is whether a Sixth Amendment error was committed.  As noted by Judge Haden at the first sentencing hearing, the jury convicted Defendant of Count One, conspiracy involving 50 grams or more of cocaine base, exposing him to a term of imprisonment of not less than ten years or more than life.  21 U.S.C. § 841(b)(1)(A)(iii).  Defendant was also convicted of Count Five, which charged him with possession with intent to distribute "a quantity" of cocaine base, exposing him to a term of imprisonment of not more than twenty years.  21 U.S.C. § 841(b)(1)(C).

At least 50 grams of cocaine base yields a Base Offense Level of 32, four levels below the Base Offense Level used by Judge Haden, after consideration of relevant conduct.  When combined with the increase of two levels for possession of a firearm, Defendant

19

was sentenced after his first direct appeal at a Total Offense Level of 38, six levels above the level found by the jury beyond a reasonable doubt.  Using Criminal History Category IV, instead of facing 324 to 405 months at level 38, Defendant would face a guideline range of 168 to 210 months.  Thus, if Defendant's direct appeal had not concluded at the Fourth Circuit, and if a petition for a writ of certiorari had been filed, raising a <u>Blakely</u> claim, it is probable that a Sixth Amendment error would have been found, and Defendant's case would have been remanded for re-sentencing in light of <u>Booker</u>.  Defendant's current sentence of 405 months is nearly twice as much as the maximum authorized by the jury verdict, in violation of <u>Booker</u>.  <u>United States v. Hughes</u>, 401 F.3d 540, 547 (4th Cir. 2005).  Moreover, in <u>United States v. Green</u>, ___ F.3d _ , 2006 WL 267217 *5 (4th Cir. Feb. 6, 2006), the Fourth Circuit held that "a sentence imposed 'within the properly calculated Guidelines range . . . is presumptively reasonable.'"  If Defendant's "presumptively reasonable" sentence is 210 months, then it is clear that he has been prejudiced by his attorney's ineffective assistance of counsel on appeal.

It also appears that a statutory error was committed, because Judge Haden treated the Sentencing Guidelines as mandatory. However, in light of Judge Haden's comments at the two sentencing hearings, it is doubtful that Defendant was prejudiced by any statutory error, and there is no need to discuss the matter

20

further.

It is possible that post-<u>Booker</u>, Defendant could receive the same sentence as pre-<u>Booker</u>, but that is not the standard.  Rather, to determine whether a defendant has been prejudiced as a result of his attorney's failure to provide effective assistance of counsel, the court must determine whether there is a "reasonable probability" that the result of the proceeding would have been different.  That standard has certainly been met.

For the foregoing reasons, the undersigned proposes that the presiding district judge **FIND** that:

--Ms. Mooney's representation of Defendant fell below an objective standard of reasonableness in that she failed to preserve Defendant's right to pursue his direct appeal to the Supreme Court.

--Ms. Mooney's expectation that Defendant would file a § 2255, in light of <u>Blakely</u>, rather than request a petition for a writ of certiorari was not an exercise of reasonable professional judgment.

--Defendant was denied effective assistance of counsel in connection with his appeal on and after June 24, 2004.

--Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different in that Defendant's case would likely have been remanded for proceedings consistent with <u>Booker</u>, and the non-mandatory, presumptively reasonable guideline range would have been significantly lower.

21

–Defendant has shown "cause and actual prejudice," thus excusing his procedural default.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the District Court grant Movant's Motion filed pursuant to 28 U.S.C. § 2255.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United

22

States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Robert Jared Smith, and to counsel of record.

_March 1, 2006_
       Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

23